PAUL R. BOONE, Plaintiff-Appellee, v. THE DEPARTMENT OF LABOR et al., Defendants-Appellants.

Fifth District   No. 5—85—0372

Opinion filed May 12, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and James P. Nally, Assistant Attorney General, of Chicago, of counsel), for appellants.

David K. Grounds, of East Alton, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Paul R. Boone, filed a complaint in the circuit court of Madison County for review of a decision by the Director of Labor denying plaintiff's claim for unemployment benefits. The circuit court reversed the decision of the Director.

We reverse and remand with directions.

Plaintiff was one of 24 to 26 production and maintenance workers employed at the East Alton plant of Airco Industrial Gases, a company which manufactures liquified gases. As of April 1, 1978, all but two of the production and maintenance workers were members of the International Union of Operating Engineers. Plaintiff was one of the nonunion workers, because he had just started working at the plant three weeks earlier and was in the midst of a 90-day probationary period which he said was required before he was eligible to join the union. However, plaintiff did the same production and maintenance work done by the members of the union. On April 1, 1978, the union called a strike after negotiations failed to produce a contract acceptable to the members. Pickets appeared outside the plant. Plaintiff was told by company managers not to come to work until the strike was over. He did not picket or otherwise support the strike, and stated

that he did not receive strike benefits as the union members did.

The strike ended on May 20, 1978, and plaintiff was called back to work. He received an increase in wages and benefits upon his return. Plaintiff eventually joined the union sometime after the strike had ended.

Plaintiff testified that he had heard from others that the plant operated normally during the strike, with managers from the plant and personnel from other facilities taking the place of the production and maintenance workers. Plaintiff also corroborated the testimony of a fellow worker, Mike Sherman, who testified that approximately 10 company managers operated the plant during the strike, working 12-hour shifts. Sherman stated that there was no slowdown in production during the strike. However, plaintiff stated that the management personnel operating the plant would have had to cut corners during the strike due to the loss of the regular employees.

It was also plaintiff's opinion that he was not in the same grade or class of workers as the union members because he was not a member of the union.

Plaintiff applied for unemployment compensation for the weeks of the strike. A claims adjuster in the Department of Labor determined plaintiff was ineligible for benefits, and the Director of Labor, adopting the report and recommendations of his representative, denied benefits. The circuit court of Madison County reversed the Director's decision.

In reviewing the Director's decision, we acknowledge that we are limited to determining whether it was contrary to the manifest weight of the evidence. (*Central Foundry Division of General Motors Corp. v. Holland* (1976), 36 Ill. App. 3d 998, 1003, 345 N.E.2d 143, 147.) The Director's decision to deny benefits was based upon his interpretation of section 604 of the Unemployment Insurance Act, which, in pertinent part, states: "An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed." Ill. Rev. Stat. 1977, ch. 48, par. 434.

There is no question a labor dispute existed at the Airco Plant. (See *Local 7-641, Oil, Chemical & Atomic Workers International Union, AFL-CIO v. Department of Labor* (1983), 96 Ill. 2d 94, 98, 449 N.E.2d 134, 136.) The parties disagree, however, on whether there was a stoppage of work. Our supreme court has held that a stoppage of work ends when the employer's business operations re-

turn to substantially normal operations. (*Travis v. Grabiec* (1972), 52 Ill. 2d 175, 182, 287 N.E.2d 468, 472.) The court in *Travis* found that the company was able to attain full production during a labor dispute by using a skeleton force working abnormal hours and doing abnormal functions. This, the court found, was not "normal operations," because if this were considered normal, it would mean the company never needed the employees who were off the job during the labor dispute. 52 Ill. 2d 175, 182, 287 N.E.2d 468, 472.

The same reasoning applies to the case *sub judice*. Airco was operating with less than half the normal number of workers. The evidence was the managers were working 12-hour shifts, and would have had to cut corners to keep the plant operating. Furthermore, to conclude the company was able to achieve substantially normal operations during the strike with far fewer than the normal number of workers would mean the regular employees were never needed at all, a proposition which neither side asseverates here. Consequently, we conclude the Department's finding that there was a work stoppage and that it continued until the strike was over is not against the manifest weight of the evidence.

■ Having concluded there was a labor dispute and a resultant work stoppage, we must determine if plaintiff is ineligible despite the "relieving proviso" of section 604. The language of this proviso is as follows:

> "This Section shall not apply if it is shown that (A) the individual is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work and (B) he does not belong to a grade or class of workers of which immediately before the commencement of the stoppage there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute ***." (Ill. Rev. Stat. 1977, ch. 48, par. 434.)

In other words, plaintiff is ineligible if he or others of his grade or class were participating in, financing, or directly interested in the labor dispute. (*General Motors Corp. v. Bowling* (1981), 85 Ill. 2d 539, 542, 426 N.E.2d 1210, 1211.) The Director found that plaintiff was in the same grade or class as the union members who went out on strike. Plaintiff testified all the union members were production and maintenance workers, and that he too was a production and maintenance worker. There was no indication his status or duties were any different than any of the other workers. The mere fact plaintiff was not a union member at the time of the labor dispute did not preclude

him from belonging to the same grade or class as the union members. Furthermore, these union members clearly participated in and were directly interested in the labor dispute. Thus, the Director correctly concluded plaintiff was ineligible because workers of plaintiff's grade or class were participating in and were directly interested in the labor dispute.

The Director had also concluded plaintiff was ineligible for benefits because plaintiff himself was directly interested in the labor dispute due to the fact he received an increase in wages and benefits as a result of the strike. Having concluded plaintiff belonged to a grade or class of workers participating in and directly interested in the dispute, we need not address this second justification presented by the Director.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed and the cause remanded with directions to enter a judgment affirming the decision of the Director denying unemployment benefits to plaintiff.

Reversed and remanded with directions.

KASSERMAN, P.J., and WELCH, J., concur.